Fair et ux., Appellants, *v.* Snowball Express, Inc.

Argued April 9, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*John E. Evans, Jr.,* with him *Evans, Ivory & Evans,* for appellants.

*Giles J. Gaca,* with him *Thomson, Rhodes & Grigsby,* for appellees.

*Bruce R. Martin,* for additional defendant, appellee.

OPINION BY SPAULDING, J., September 19, 1973:

Appellant William Fair appeals from the denial of his motion for a new trial following a jury verdict in favor of appellees Snowball Express, Inc., Weiss Packing Co., Inc., and the additional defendant, William Fair. These trespass actions arose from a collision on March 4, 1970, involving a truck operated on behalf of the corporate appellee and a car driven by Fair. Appellant's wife, Edith I. Fair, was a passenger in appellant's car and sustained fatal injuries in the accident. Appellant suffered personal injuries. Appellant, as administrator of his wife's estate, filed suit against the two corporate appellees claiming damages under the Pennsylvania Survival and Wrongful Death Acts. The two corporations as original defendants joined appellant as an additional party defendant. Appellant Fair also sued the corporations for his own personal injuries.

The evidence as to which of the appellees was at fault in causing the accident was directly contradictory. The collision occurred on Route 51, a four-lane highway in Allegheny County. A concrete medial strip approximately three feet wide and eight inches high divides the two northbound and two southbound lanes. Each operator claimed that the other driver crossed the medial strip and caused the collision. Fair testified that he was traveling north at about thirty miles per hour, in the right-hand lane, in light traffic, when he saw appellees' truck in the southbound passing lane shake, jump the medial strip, and continue southward down the middle of the northbound lanes. Appellant said he swung his car to the left in an unsuccessful attempt to avoid the collision. The driver of the truck testified that he was proceeding at about forty-five miles per hour in fairly heavy traffic when suddenly appellant's car came across the medial barrier directly into his path. The truck driver said he was unable to avoid the collision and after impact came to rest straddling the medial strip, extending slightly into the northbound lanes.

Appellant argues that when an innocent passenger in one of two colliding cars is injured, and when all the evidence presented shows one or both drivers negligent, in the absence of any external causes the only question for the jury is the amount of damages and against whom they should be awarded. Appellant contends that the jury's finding was against the weight of the evidence, and that the court, sitting en banc, abused its discretion in denying his motion for a new trial. The court, in denying this motion, said that the appellant had not met the burden of proving the negligence of the defendants, and that the jury's finding of no negligence at all could be supported by the record. The appellees agree with the court, and further contend that to recover "the burden [is] on each party to

prove the other was negligent and that such negligence was the proximate cause of the accident. The mere happening of an accident does not prove negligence." *Morgenstern v. Kotik*, 210 Pa. Superior Ct. 32, 34, 231 A. 2d 874 (1967). Accord, *Zeman v. Canonsburg Borough*, 423 Pa. 450, 223 A. 2d 728 (1966).

While this is the general rule of law in Pennsylvania, it is not applicable in all situations. In "wrong side of the road" accidents, i.e., where one car suddenly enters the lane of oncoming traffic and an accident occurs, it is too great a burden to make the injured party prove that the defendant's act was a result of his negligence and would often result in the defendant's unjustly escaping liability. To avoid this inequitable result, our courts have held that unless the defendant can explain his presence in the wrong lane, negligence can be inferred. *Campbell v. Fiorot*, 411 Pa. 157, 191 A. 2d 657 (1963); *Smail v. Flock*, 407 Pa. 148, 180 A. 2d 59 (1962); *Nixon v. Chiarilli*, 385 Pa. 218, 122 A. 2d 710 (1956).

Applying the rule from this line of cases to the present matter is difficult, because it is not known for certain which party crossed the barrier. However, since the accident took place between two motor vehicles originally traveling in opposite directions on a divided highway, at least one of them had to have crossed the medial strip. Furthermore, Edith Fair, who died of injuries sustained in the collision, was not one of the drivers, but rather an innocent third party. With such a factual pattern the burden should be placed on the defendants (appellees) to show that they were free of negligence. The only testimony of the drivers was a denial by each party of having crossed the medial strip and accusations that the other party was solely responsible. No excuses such as bad weather or road conditions, emergency, or mechanical failure were given by the drivers or witnesses. In a situation in-

volving this type of accident, where the only evidence goes to which party was negligent and not to any exculpatory circumstances, and where the injury is to an innocent third party, negligence must necessarily be found.

This is the result we reached in *Weinstein v. Philadelphia Transportation Company*, 222 Pa. Superior Ct. 448, 295 A. 2d 111 (1972), which applies to the present case and is dispositive of the issues raised. In *Weinstein*, a passenger in a PTC bus was injured when the bus and a car collided. The evidence presented by the two defendant-appellees (PTC and the driver of the car) was directly contradictory, each blaming the other totally for the accident. In reversing the order of the court below and granting a new trial for the plaintiff-appellant, we relied heavily on the opinion of the late Mr. Justice MUSMANNO in *Salvio v. Musgrave*, 419 Pa. 346, 347-8, 214 A. 2d 226, 227 (1965). Quoting from *Salvio*, this Court said:

" '[T]he "divergence in testimony was on the question of *which* defendant was negligent, not that neither defendant was negligent." ' (Emphasis supplied.)

" 'A reading of the record shows that there is no evidence which would exonerate *both* defendants. Each defendant shot crippling shots of negligence at the other. . . . No one was neutral and if either side had been believed, a verdict for the plaintiff would have been wholly in order. The physical circumstances of the event excluded the possibility that all evidentiary shots went wild. Nor would it be just or logical that the only one who should be hit by the fusillade was the person who already was an innocent victim of the highway. There was never a suggestion throughout the trial that the plaintiff was in any way contributorily negligent'." (Emphasis in original.)

This is exactly the situation in the instant case. From the type of accident that occurred, and in the ab-

sence here of any exculpatory circumstances, the collision must have resulted from negligence. Since the deceased was an innocent third party free from any contributory negligence, her estate is therefore entitled to recover. The questions for the jury are only the amount of damages and from whom they are recoverable.

It is very difficult from the evidence presented in this case to decide who was negligent. However, the difficulty of such a decision does not justify the jury's avoiding it completely by finding for all of the defendants, when such a finding cannot be supported by the record. The Court, in *Salvio* faced this issue of a jury's dereliction of duty, stating that: " 'The injustice of these verdicts is apparent and shocks one's fundamental sense of justice and cannot be permitted to stand. . . . Were the jury to have resolved the liability against either one of these defendants one could observe that the jury had resolved the conflict in testimony that appeared before them. Where, however, as here, the jury has exonerated both defendants it is manifestly clear that the jury simply disregarded or misunderstood its duty or the issues presented for their decision. . . . Plaintiffs have a right to a day in court before a jury which will hear and evaluate the testimony and decide the issues presented for decision under the law submitted to them. As this did not occur in the instant case, our only method of rectifying such a grave miscarriage of justice is to grant a new trial against both the original defendant and the additional defendant.' "

The jury returned two identical verdicts finding "the defendants not guilty", for both the appellant's own claims and his claims as administrator of his wife's estate. To grant appellant a retrial in his capacity as administrator, but to allow the verdict to stand as to his own personal injuries, could produce an inconsistent and contradictory verdict and result.

The order of the court below is reversed and the appellant, both for himself and as administrator of his wife's estate, is granted a new trial against the original and additional defendants.

WRIGHT, P. J., would affirm on the opinion of Judge PRICE.

WATKINS and JACOBS, JJ., dissent.