470 A.2d 1353

**Nancy MILLER, Appellant,**

**v.**

**Robert L. GAY and Cynthia L. Doucette.**

Superior Court of Pennsylvania.

Argued Feb. 23, 1982.

Filed Dec. 16, 1983.

Reargument Denied Feb. 27, 1984.

Shelly Glenn Farber, Media, for appellant.

Werner H. Von Rosenstiel, Philadelphia, for appellees.

Before SPAETH, BROSKY and BECK, JJ.

BROSKY, Judge:

This action was commenced by appellant, Nancy Miller, who seeks damages for injuries she suffered in an automobile accident that occurred in Glascow, Delaware in January, 1979. At the time of the accident Miss Miller was a passenger in an automobile driven by appellee Robert L. Gay. Miss Miller is a Delaware resident; Mr. Gay resides in Pennsylvania.[1] Mr. Gay filed preliminary objections to the complaint alleging that Delaware law should be applied in this case and the complaint dismissed because the Delaware Guest Statute[2] precludes recovery by Miss Miller.

The lower court dismissed the complaint on the grounds of "forum non conveniens" and said that even if the forum were found to be proper, it would dismiss the complaint based on the Delaware statute. For the reasons that follow, we affirm the order.

We note initially that we would not have dismissed this action on "forum non conveniens" grounds. Although the lower court opinion discusses many of the factors to be applied in determining the appropriateness of the forum chosen by the plaintiff, see e.g. *Plum v. Tampax, Inc.*, 399 Pa. 553, 160 A.2d 549 (1960), it does not mention what the *Plum* opinion says is one of the most important factors.

---

1. The other named defendant, not a party to this appeal, is a resident of Delaware. The complaint was dismissed as to Miss Doucette also, but no appeal was taken from that order.

2. Del.Code, Ann. Title 21, § 6101.

Citing the *Restatement, Second, Conflict of Laws*, (Tentative Redraft No. 4, April 5, 1957), comment to Section § 117(c), the *Plum* court stated at 560, 561, 160 A.2d at 553:

... The two most important factors look to the court's retention of the case. They are (1) that since it is for the plaintiff to choose the place of seat, his choice of a forum should not be disturbed except for weighty reasons, and (2) that the action will not be dismissed in any event unless an alternative forum is available to the plaintiff. Because of the second factor, the suit will be entertained, no matter how inappropriate the forum may be, if defendant cannot be subjected to jurisdiction in other states. The same will be true if plaintiff's cause of action would elsewhere be barred by the statute of limitations, unless the court is willing to accept defendant's stipulation that he will not raise this defense in the second state.

See also *Daugherty v. Inland Tugs*, 240 Pa.Super. 527, 359 A.2d 465 (1976).

▇ Both Pennsylvania and Delaware have two year statutes of limitation as to personal injury actions,[3] which have now run in this case. Dismissal of this complaint should not rest on forum non conveniens grounds when such a decision results in the plaintiff being unable to institute an action elsewhere.[4]

We nevertheless agree with the result reached by the lower court.

The lower court applied a "significant relationship" test to the facts of this case and concluded that Pennsylvania does not have such a relationship with the parties or occurrence.

**3.** 42 Pa.C.S.A. 5524, 10 Del.Code Annot. § 8119.

**4.** But see *Norman v. Norfolk & Western Railway Company*, 228 Pa.Super. 319, 323 A.2d 850 (1974) (a state may dismiss a case conditionally requiring the defendant to stipulate that he will accept service and will not plead the statute of limitations in the more convenient forum.) To the same effect see *Daugherty v. Inland Tugs Company*, 240 Pa.Super. 527, 359 A.2d 465 (1976).

In *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964) our Supreme Court abandoned the "lex loci delicti" rule that had been employed in choice of law questions and adopted the "significant relationship" theory. That is, the court refused to automatically apply the law of the place in which the incident occurred; but instead analyzed the policies and interests underlying the particular issue before the court. Id., 416 Pa. at 21, 203 A.2d at 805.

The sole connection with Pennsylvania in the instant case is that appellee, one of two named defendants, resides here.

In contrast, the accident occurred in Delaware. The plaintiff and one defendant reside there, and the lower court found the relationship between the injured Miss Miller and Mr. Gay was centered in Delaware.

■ Of course, we must do more than merely count contacts. See *Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854 (1970). The weight of the contacts is to be measured qualitatively rather than quantatively. Id., 439 Pa. at 566, 267 A.2d at 856.

■ In *Cipolla* as in the present case, the underlying issue involved application of the Delaware Guest Statute. The accident had occurred in Delaware. The court said that because the statute does not provide a "rule of the road," the situs of the accident is not a relevant contact. We must not, therefore, rely upon situs of the occurrence in our case.

In *Cipolla* the guest resided in Pennsylvania and the court said Pennsylvania's policy permitting guest recovery made this Commonwealth a concerned jurisdiction. Similarly, the driver was a resident of Delaware, making its host-protecting policy relevant.

The reverse situation exists in the present case. The driver is a resident of Pennsylvania, which has a guest-protecting policy and the guest is a resident of host-protecting Delaware.

Under these circumstances we believe neither state seems to have a significant relationship as to the issue of guest vs. host protection.

We return to *Griffith*, supra for guidance as to how to proceed in the face of this seemingly neutral situation.

The *Griffith* court cites, apparently with approval, Section 379a of the Restatement, Second which provided

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless some other state has a more significant relationship with the occurrence and the parties as to the particular issue involved, in which event the local law of the latter state will govern.

Id. 416 Pa. at 15, 203 A.2d at 802, 3.

Section 146 of the Restatement Second (adopted by the American Law Institute in May, 1969 and replacing § 379(a) cited in *Griffith* ), in its present form, contains substantially similar language adding a test to be applied to determine whether a state other than the situs has a significant relationship to the occurrence or the parties. It provides:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Section 6 states:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable law include.

    (a) the needs of the interstate and international systems,

    (b) the relevant policies of the forum,

    (c) the relevant policies of other interested states and the relevant interests of those states in the determination of the particular issue,

    (d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

We have earlier discussed the relative policies of the forum and Delaware, the only other interested state and do not find them dispositive.

However, we do believe that certainty, predictability and uniformity of result will be aided by the application of Delaware law. We also find no difficulty in the application of that law.

We find no significant relationship to Pennsylvania that would call for application of its law rather than that of Delaware.

■ In *Cipolla,* supra 439 Pa. at 567, 267 A.2d at 854 the Supreme Court wrote, "Inhabitants of a state should not be put in jeopardy of liability exceeding that created by their state's laws just because a visitor from a state offering higher protection decides to visit there." [5] Analogously, we conclude that inhabitants of a state (here Delaware) should not be accorded rights not given them by their home states, just because a visitor from a state offering higher protection decides to visit there.

We are guided further by Pennsylvania's No-Fault Motor Vehicle Act [6] which states in relevant part:

The right of a victim or of a survivor of a deceased victim to sue in tort shall be determined by the law of the state of domicile of such victim. If a victim is not domicile in a state, such right to sue shall be determined

---

5. It is interesting to note that the *Cipolla* opinion concludes with the observation that "as a general approach a territorial view seems preferable to a personal view."

6. Act of July 19, 1974, P.L. 489, No. 176, Art. 1; 40 P.S. § 1009.-110(c)(2).

by the law of the state in which the accident resulting in injury or damage to property occurs.

In *Toter v. Knight,* 278 Pa.Super. 547, 420 A.2d 676 (1980) we explained the effect of this statute as follows:

> The provision embodies two choice-of-law principles: 1.) The right of the victim of a motor vehicle accident to sue in tort shall be determined by the law of his domicile; and 2.) if the victim is not domiciled in a state, the victim's right to sue shall be determined by the law of the state in which the accident occurred. *Id.,* 278 Pa.Superior Ct. at 550, 551, 420 A.2d at 678.

In *Toter* the victim was domiciled in New Jersey and was injured in an automobile accident in Pennsylvania. We held that his right to sue in tort was to be determined by the law of New Jersey.[7]

Similarly, we conclude that the law of appellant's domicile Delaware, governs the instant case.

Appellant also argues that even if Delaware law applies to this case, the Guest Statute restrictions do not. We have considered these arguments and reviewed the record before us. Because we believe that the trial court opinion adequately disposes of these questions, there is no further need for comment.

Order affirmed.

SPAETH, J., files a dissenting opinion.

SPAETH, Judge, dissenting:

I should reverse the order of the trial court and permit appellant to proceed to trial, for in my view, Pennsylvania rather than Delaware law governs this action.

I am unable to join the majority's opinion for two reasons. First, the majority states that the choice of law rule con-

---

7. The issue in *Toter* centered on whether New Jersey's $200 threshold amount or Pennsylvania's $750, mandated by Section 301 of the No-Fault Act, has to be met before the victim could recover in tort. While the issue in our case does not directly involve the No-Fault Act, we nonetheless find the discussion in *Toter* instructive as to the policy of this Commonwealth in automobile accident cases.

tained in the No-Fault Act supports its conclusion that Delaware law should apply to this case. But this case has nothing to do with the No-Fault Act. Second, the majority concludes that Pennsylvania follows the significant contacts approach to resolving conflict of laws problems. If this were so, still, Pennsylvania law should govern, but it is not so. Under *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964), Pennsylvania follows a more "flexible approach", and under the more flexible approach, Pennsylvania law should govern.

–1–

It is settled that if a Pennsylvania court has jurisdiction over a dispute, the court will apply Pennsylvania conflict of laws principles to decide which state's law governs the matter. *See, e.g., Griffith v. United Air Lines, Inc.*, *supra; Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854 (1970). Of course, if a conflict of laws rule is imposed by statute, we must apply that rule. Although the majority concedes that this case "does not directly involve the No-Fault Act," Slip op. at 8 n. 6, it nevertheless states that Section 110(c)(2) of the Act provides support for its conclusion that Delaware law governs this action. *Id.*, 416 Pa. at 7, 203 A.2d 796.

It is true that Section 110(c)(2) of the Act provides that "[t]he right of a victim ... to sue in tort shall be determined by the law of the state of domicile of such victim ..." 40 P.S. § 1009.110(c)(2). In her complaint appellant averred that the cost or reasonable value of services for the injuries she sustained in the accident exceeded $750. This averment—that appellant's injuries exceeded the threshold for suing in tort—was unnecessary, however, for Section 301 of the Act abolishes and then reinstates the right to sue in tort if its conditions are met, "with respect to any injury that takes place in this State ..." 40 P.S. § 1009.301(a). Thus, to sue in tort for injuries that "take[ ] place" *outside* Pennsylvania, the victim need not meet the threshold requirements of Section 301(a)(5), or any of the other requirements of Section 301.

*Toter v. Knight,* 278 Pa.Super. 547, 420 A.2d 676 (1980), cited by the majority, is inapposite. There, the question was whether New Jersey's threshold for suing in tort, or Pennsylvania's, applied. Section 301 of the Act was applicable because the accident occurred *in Pennsylvania.* Here, since the accident occurred in Delaware, the question of the applicable tort threshold is not before us. Section 110(c)(2) therefore has nothing to do with this case.

Nor is any other provision of the No-Fault Act implicated. Appellant has not made a claim for basic loss benefits. *See* 40 P.S. § 1009.201(b). Moreover, the No-Fault Act is principally directed at intra-state travel, *see, e.g.,* 40 P.S. § 1009.-102(a), and at providing "a statewide system of prompt and basic loss benefits", *id.* § 102(b), for Pennsylvania residents, and these concerns are not relevant here. Finally, the No-Fault Act is an almost exact copy of The National No-Fault Motor Vehicle Insurance Act, S. 354, 93rd Cong., 2d Sess. (1974). The drafters of the National Act envisioned that it would be adopted nationwide, and that the same principles would therefore govern the recovery rights of all victims, regardless of where they were injured. In fact, few states have adopted the National Act to the extent that Pennsylvania has. We should therefore be especially reluctant to look to the choice of law provision of the No-Fault Act in deciding a case to which the Act does not otherwise apply.

–2–

In concluding that Delaware law should be applied, and the complaint therefore dismissed on the basis of Delaware's Guest Statute, the majority correctly notes that Pennsylvania has rejected the lex loci delicti—or law of the place of the injury—method of resolving a conflict of laws issue. *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964). According to the majority, the correct method is the "significant relationship" approach of the Restatement (Second) of Conflicts of Laws (1971). The significant relationship, or significant contacts, method of

resolving a conflict of law issue is embodied in three sections of the Restatement. Section 146 provides:

Personal Injuries

In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Section 6 provides:

Choice-of-Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Finally, Section 145(2) provides:

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Citing these sections, the majority concludes that neither Pennsylvania nor Delaware has a significant relationship to this dispute, At 1355, but that Delaware law governs because "certainty, predictability and uniformity of result will be aided by application of Delaware law," *id.* at ——. *See* Restatement (Second) of Conflict of Laws § 6(2)(f).

I am not persuaded by this reasoning. Although the majority cites the applicable sections of the Restatement, it does not correctly apply them. The majority fails to consider the choice-of-law principles stated in Section 6, which call for a weighing of the relative importance of the policies of the states involved. Instead, the majority merely states the respective policies of Pennsylvania and Delaware and counts the contacts, while acknowledging that we must do more than count contacts. In addition, the majority apparently gives equal weight to each of the contacts identified. But the place of the injury and the place of the conduct causing the injury are to be given weight only if they have some independent significance. *See McSwain v. McSwain,* 420 Pa. 86, 215 A.2d 677 (1966); *Griffith v. United Air Lines, Inc., supra.* The place where the relationship of the parties is centered may be given weight, *Kuchinic v. McCrory,* 422 Pa. 620, 222 A.2d 897 (1966), but it is not clear on this record that Delaware should receive all of the weight; we know only that the accident occurred while appellee and appellant were on their way to an engagement in Delaware. *Compare Kuchinic v. McCrory, supra* (Pennsylvania center of the relationship when airplane passengers and their host lived in Pennsylvania and accident occurred during flight from Georgia to Pittsburgh).

In any event, I disagree with the majority that the significant contacts approach is the correct method by

which to decide the case. In *Griffith v. United Air Lines, Inc., supra,* the Supreme Court, after an exhaustive review of the numerous authorities and various theories on conflict of laws, noted the concern that the Second Restatement would encourage the mere counting of contacts. *Id.* 416 Pa. at 16, 203 A.2d at 803. The Court also observed that "almost all authorities agree that there must be a policy analysis approach to replace the place of the injury rule." *Id.* Rejecting the place of the injury rule, the Court adopted "a more flexible rule which permits analysis of the policies and interests underlying the particular issues before the court." *Id.,* 416 Pa. at 21, 203 A.2d at 805 (footnote omitted).[1] The nature and operation of this rule may be gathered from its application in *Griffith.*

The facts in *Griffith* were that a Pennsylvania resident was killed in an airplane crash that occurred in Colorado while the plane was en route from Arizona to Pennsylvania. Under the Colorado law, damages recoverable after death were "limited to loss of earnings and expenses sustained or incurred prior to death." Under Pennsylvania law, recov-

1. The Court of Appeals for the Third Circuit has said that Pennsylvania follows "governmental interest analysis" in resolving conflicts of laws. *See, e.g., Reyno v. Piper Aircraft Co.,* 630 F.2d 149 (3rd Cir. 1980), *rev'd on other grounds,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Samuelson v. Susen,* 576 F.2d 546 (3d Cir.1978); *Suchomajcz v. Hummel Chemical Company,* 524 F.2d 19 (3d Cir.1975).

   Under governmental interest analysis a preference is given to the law of the forum. If both states are found to have an interest in the dispute, the policies underlying the law of each state having an interest in the dispute must be analyzed, and the court must determine which state's policies, or interests, would be furthered to a greater extent by application of its law. A false conflict exists if one of the states is found to have no interest in the question, and the other state's law will then be applied. *See generally* B. Currie, Selected Essays (1963); Currie, Comments on *Babcock v. Jackson:* A Recent Development in Conflict of Laws, 63 Colum.L.Rev. 1212 (1963).

   My review of the Pennsylvania cases suggests that they are consistent with governmental interest analysis, but I refrain from adopting that characterization as perhaps less "flexible" than the "more flexible rule" adopted in *Griffith.* Thus, in *Griffith* the Court said: "We are at the beginning of the development of a workable, fair and flexible approach to choice of law which will become more certain as it is tested and further refined when applied to specific cases before our courts." *Id.,* 420 Pa. at 22, 203 A.2d at 806.

ery could be had for the present worth of the decedent's likely earnings. Analyzing the respective interests of Colorado and Pennsylvania, the Court concluded that Colorado had relatively little interest in the action, but that Pennsylvania's interest was great. The state of the place of injury—Colorado—could have little if any interest in the measure of damages, unless the defendant had acted in reliance on that state's laws, and in the case of an unintentional tort, "the reliance argument is almost totally untenable." *Id.*, 416 Pa. at 23, 203 A.2d at 806. Colorado might be interested in the compensation of those who assist the injured party, but this interest was absent when the injury resulted in immediate death. *Id.*, 416 Pa. at 24, 203 A.2d at 807. Colorado might also be interested in preventing its courts from engaging in speculative damage computations, but it should not care if a Pennsylvania court engaged in such computations. Finally, Colorado might be interested in protecting its residents from large verdicts, but while United did some business in Colorado, it was not domiciled there, and furthermore, since its airplanes flew over many states, including states, like Pennsylvania, that did not limit damages, it could protect itself against such verdicts. In contrast, Pennsylvania, as "the domicile of decedent and his family, [was] vitally concerned with the administration of decedent's estate and the well-being of the surviving dependents to the extent of granting full recovery, including expected earnings." *Id.*, 416 Pa. at 24–25, 203 A.2d at 807.

Since *Griffith*, the Court has continued to adhere to a "flexible approach." In *McSwain v. McSwain*, 420 Pa. 86, 215 A.2d 677 (1966), the Court said:

Whether the policies of one state rather than another should be furthered in the event of a conflict can only be determined within the matrix of specific litigation. What should be sought is an analysis of the extent to which one state rather than another has demonstrated, by reason of its policies and their connection and relevance to the matter in dispute, a priority of interest in the application of its rule of law.

*Id.,* 420 Pa. at 94, 215 A.2d at 682.[2]

And in *Cipolla v. Shaposka,* 439 Pa. 563, 267 A.2d 854 (1970), the Court said:

> In determining which state has the greater interest in the application of its law, one method is to see what contacts each state has with the accident, the contacts being relevant only if they relate to the "policies and interests before the court." When doing this it must be remembered that a mere counting of contacts is not what is involved. The weight of a particular state's contacts must be measured on a qualitative rather than quantitative scale.
>
> *Id.,* 439 Pa. at 566, 267 A.2d at 856 (*quoting Griffith v. United Air Lines, Inc., supra* 416 Pa. at 21, 203 A.2d at 805).

Here, the majority relies on *Cipolla v. Shaposka, supra,* but it is the converse of this case, and does not support the majority's decision. In *Cipolla,* a Pennsylvania resident sued a Delaware driver for injuries sustained in an automobile accident that occurred in Delaware. The Supreme Court identified Pennsylvania as a "concerned jurisdiction" because "it is Pennsylvania's policy that its guests should be permitted to recover for injuries caused by their hosts' negligence." *Id.,* 439 Pa. at 566, 267 A.2d 856. However, Delaware's concerns, the Court said, were greater: "[I]t is Delaware's policy that its hosts should not be required to

**2.** In *McSwain,* Mr. McSwain, a Pennsylvania resident and member of the armed services stationed on the West coast, was driving his wife and child across country to Pennsylvania when their automobile was involved in an accident in Colorado, and the child was killed. Mrs. McSwain sued her husband in Pennsylvania under the Colorado Death Act. Pennsylvania law did not permit recovery between spouses. The Court concluded that while Colorado's only interests in the action—to deter negligent conduct on its highways and to provide a fund for the payment of local creditors—would not be disserved by application of Pennsylvania law, "[t]he mere fact that the accident occurred in Colorado, absent the expression of a significant interest on the part of that state, does not justify our refusal to give effect to the public policy of this Commonwealth, ... that suits of the instant sort not be permitted." *Id.,* 420 Pa. at 97, 215 A.2d at 683.

compensate for their (the hosts') negligence." *Id.* In addition, "[T]he fact that the automobile involved in the accident is registered and housed in Delaware gives that state another contact for it appears that insurance rates will depend on the state in which the automobile is registered and housed ..." *Id.* Here, in contrast, a Delaware resident has sued a Pennsylvania driver, and the automobile involved in the accident is registered and housed in Pennsylvania. Pennsylvania's policy of permitting guests to recover for injuries caused by their hosts' negligence is the same as it was in *Cipolla,* but as will be discussed in greater detail, it cannot be said that Delaware's policy of protecting its hosts from suits by ungrateful guests is served by application of Delaware law. In *Cipolla,* the Court stated: "Inhabitants of a state should not be put in jeopardy of liability exceeding that created by their state's law just because a visitor from a state offering higher protection decides to visit there." *Id.,* 439 Pa. at 567, 267 A.2d at 856–57. Here, appellant, by driving his automobile into Delaware, did not put himself in jeopardy of incurring greater liability than that to which he was already subject in Pennsylvania, his home state. Instead, although a non-resident of Delaware, he seeks to use the Delaware Guest Statute as a shield, which is very different from the situation in *Cipolla,* where a Delaware resident invoked the statute.

I therefore conclude that we should apply the "flexible rule" adopted by the Supreme Court in *Griffith v. United Air Lines, Inc., supra,* to this case, and should consider the respective interests of Delaware and Pennsylvania in this case to determine which state has the stronger interest in having its law applied.

Delaware's Guest Statute permits recovery by a guest in an automobile if the guest proves that the injury was "intentional" or "caused by [the driver's] willful or wanton disregard of the rights of others." Del.Code Ann. tit. 21, § 6101(a). Delaware courts have found that two purposes

underlie the Guest Statute. The first purpose underlying the statute is to protect hosts from the ingratitude of their guests. *See, e.g., Fields v. Synthetic Ropes, Inc.,* 59 Del. 302, 219 A.2d 374 (Del.Super.Ct.1966); *Colombo v. Sech,* 52 Del. 575, 163 A.2d 270 (Del.Super.Ct.1960); *Engle v. Poland,* 47 Del. 365, 91 A.2d 326 (Del.Super.Ct.1952); *Robb v. Ramey Associates, Inc.,* 40 Del. 520, 14 A.2d 394 (Del.Super.Ct.1940). *See also Wilson v. Workman,* 192 F.Supp. 852 (D.Del.1961). The second purpose underlying the statute is to prevent collusion between hosts and guests in efforts to defraud insurance companies. *See, e.g., McHugh v. Brown,* 50 Del. 154, 125 A.2d 583 (1956); *Gallegher v. Davis,* 37 Del. 380, 183 A. 620 (1936). *See also Truitt v. Gaines,* 199 F.Supp. 143 (D.Del.1961), *aff'd* 318 F.2d 461 (3d Cir.1963).

The Delaware Supreme Court has said:

Because application of the Automobile Guest Statute so often results in harsh, unfair, and unreasonable results, courts have shown a general tendency to carve out exceptions to the operation of the Statute in the interest of justice. Our own courts have demonstrated that tendency.

*Justice v. Gatchell,* 325 A.2d 97 (Del.1974).

Nevertheless, the court upheld the constitutionality of the statute, and indicated its reluctance to carve out further exceptions, since the legislature had declined to repeal the statute. *Id. See also Pierce v. Bierer,* 447 A.2d 1189 (Del.1982) (also upholding statute as constitutional).

In applying the Delaware Guest Statute, the Delaware courts have narrowly limited the definition of "guest." *See Truitt v. Gaines, supra* (mother and son not guests of son's teacher driving them to the doctor); *Mumford v. Robinson,* 231 A.2d 477 (Del.1967) (personal friend of driver accompanying driver to fabric store not guest since she promised to give driver sewing lesson on their return). In limiting the definition of "guest" (and thus permitting more people to

recover for their hosts' ordinary negligence), the courts have relied on the principle that, as a statute in derogation of the common law, the Guest Statute should be strictly construed against the owner and operator. *See Truitt v. Gaines, supra; Fields v. Synthetic Ropes, Inc., supra.* Moreover, the courts have noted that the reach of the statute should not be extended beyond the evils it was designed to correct. *Colombo v. Sech, supra; Fields v. Synthetic Ropes, Inc., supra; Robb v. Ramey Associates, Inc., supra.*

On the basis of these decisions I conclude that Delaware has little interest in its Guest Statute being applied to this case. The Guest Statute could not have been intended to protect an out-of-state host's reliance on it as protecting him, for as the Supreme Court said in *Griffith v. United Air Lines, Inc., supra,* 416 Pa. at 23, 203 A.2d at 806, "[I]n the case of an unintentional tort, the reliance argument is almost totally untenable." And while one purpose of the statute is to protect Delaware hosts from the ingratitude of their guests, the scope of that protection is limited. The Delaware courts have made plain that because the results of the statute are often harsh, the statute should not be applied any more broadly than necessary. This is only another way of saying that Delaware's interest in protecting its hosts from their guests' ingratitude is limited. Its interest in protecting out-of-state hosts must therefore be still more limited. Nor is Delaware's interest in preventing collusion between hosts and guests in efforts to defraud insurance companies substantial. The fraud, if any, will be worked upon an insurer, which, in view of the absence of a guest statute in Pennsylvania, can adjust, and presumably has adjusted, its rates accordingly. *See Bolgrean v. Stich,* 293 Minn. 8, 10, 196 N.W.2d 442, 444 (1972) ("only party concerned with predictability is the insurer and the insurer of a Minnesota vehicle, it must be assumed, charged rates applicable to Minnesota risks."); *Tooker v. Lopez,* 24 N.Y. 569, 575, 301 N.Y.S.2d 519, 524, 249 N.E.2d 394, 397 (1969)

(guest statute's purpose of preventing fraudulent claims cannot be vindicated when insurer is New York carrier and defendant is sued in New York—"[U]nder such circumstances, the jurisdiction enacting the guest statute has absolutely no interest in the application of its law."); *and compare Cipolla v. Shaposka, supra* 439 Pa. at 566, 267 A.2d at 856 (finding it relevant that vehicle was insured in Delaware when issue is whether Pennsylvania law should apply).

In contrast to Delaware, Pennsylvania has a substantial interest in having its law apply to this case. It is settled that under Pennsylvania law a guest may recover from a host for ordinary negligence. *Denton v. Michel's Bakery Co.*, 363 Pa. 502, 70 A.2d 284 (1950); *Fair v. Snowball Express, Inc.*, 226 Pa.Super. 295, 310 A.2d 386 (1973); *Reagan v. Love*, 219 Pa.Super. 432, 281 A.2d 761 (1971); *Hopshire v. Yesenosky*, 157 Pa.Super. 545, 43 A.2d 351 (1945). The General Assembly has declined to change this law by enacting a guest statute, as some states such as Delaware have done. Pennsylvania's policy of protecting automobile passengers is further expressed in the No-fault Act, which does not distinguish between passengers and drivers. By applying Delaware law, the majority frustrates this interest of Pennsylvania in seeing that accident victims, whether passengers or drivers, should recover for their losses.

I therefore conclude that Pennsylvania law should be applied to this case. This conclusion is, I believe, required by *Griffith v. United Air Lines, Inc., supra*, but in addition, it is consistent with what may be regarded as the better-reasoned decisions from other jurisdictions.

Some commentators have described a case such as this one—a case in which the plaintiff resides in a host-protecting state, and the defendant, in a guest-protecting state—as the "unprovided for case," R. Cramton, D. Currie, & H. Kay, Conflict of Laws 281 (3d ed. 1981), and the state that

would apply its own law rather than the less generous law of the plaintiff's domicile as pursuing an "altruistic interest." Currie & Schreter, Unconstitutional Discrimination in the Conflict of Laws: Privileges and Immunities, in B. Currie, Selected Essays on the Conflict of Laws 445, 489 (1963). I have found three decisions in such "unprovided for cases." Two of them, *Labree v. Major*, 111 R.I. 657, 306 A.2d 808 (1973), and *Bolgrean v. Stich*, 293 Minn. 8, 196 N.W.2d 442 (1972), are consistent with the approach I would apply here; in each, the plaintiff from the host-protecting state was permitted to recover under the forum's more generous law. In the third, *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972), the New York Court of Appeals held the guest statute of the plaintiff's domicile applicable in a suit against a New York resident. (There is a fourth decision in which the precise question was not an issue, but where the New Jersey Supreme Court indicated that it would be inclined to permit recovery by the plaintiff from the guest statute state. *Pfau v. Trent Aluminum Company*, 55 N.J. 511, 263 A.2d 129 (1970) (*dicta*)).

In *Neumeir v. Kuehner, supra,* the court stated that in cases involving a driver and a passenger domiciled in different states,

> the applicable rule of decision will be that of the state where the accident occurred but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants.
>
> *Id.* at 128, 335 N.Y.S.2d at 70, 286 N.E.2d at 458 (*quoting Tooker v. Lopez*, 24 N.Y.2d 569, 586, 301 N.Y.S.2d 519, 533, 249 N.E.2d 394, 404 (1969) (FULD, J., concurring)).

The court reasoned that applying New York law would expose New York residents to greater liability, when they travel in guest statute jurisdictions, than persons domiciled

in such jurisdictions are subject to, and that application of New York law would "impair ... the smooth working of the multi-state system [and] produce great uncertainty for litigants" by encouraging forum shopping. *Id.* at 129, 335 N.Y.S.2d at 70–71, 286 N.E.2d at 458. In the course of its opinion the court discussed New York's interest in the case:

> It is clear that although New York has a deep interest in protecting its own residents, injured in a foreign state, against unfair or anachronistic statutes of that state, it has no legitimate interest in ignoring the public policy of a foreign jurisdiction—such as Ontario—and in protecting the plaintiff guest domiciled and injured there from legislation obviously addressed, at the very least, to a resident riding in a vehicle traveling within its borders.

> *Neumeier v. Kuehner, supra* 31 N.Y.2d at 125–26, 335 N.Y.S.2d at 68, 286 N.E.2d at 456.

I am not persuaded by this reasoning.[3] If the accident in this case had occurred in Pennsylvania rather than Delaware, *Cipolla v. Shaposka, supra,* would dictate that Pennsylvania law apply. Also, the Delaware courts would apply Pennsylvania law.[4] Application of Delaware law here gives undue weight to the place of the injury, *see Labree v. Major, supra* 111 R.I. at 671, 306 A.2d at 817, when *Griffith v. United Air Lines, Inc., supra,* and its progeny have rejected that approach. As I have tried to show, Delaware has little interest in having its law apply, whereas Pennsylvania has a substantial interest, which is not related to the place of injury.

**3.** The reasoning has been criticized elsewhere. *See, e.g.,* Sedler, Rules of Choice of Law Versus Choice-of-Law Rules: Judicial Method in Conflicts Torts Cases, 44 Tenn.L.Rev. 975, 987–94 (1977); Comment, Tort Choice-of-Law in New York: The Fuldian Guest Statute Rules v. Professor Cavers' Principles in a Hypothetical Case, 25 Syracuse L.Rev. 1005 (1974).

**4.** I note that in *Friday v. Smoot,* 58 Del. 488, 211 A.2d 594 (1965), a Delaware guest was allowed to maintain suit against a Delaware host for injuries suffered in an accident in New Jersey. The result may be explained by Delaware's strict adherence to the lex loci delicti method of resolving conflicts.

Nor am I persuaded that Delaware law should apply here because otherwise Pennsylvania residents will be subject to liability in Delaware when Delaware residents are not. First, Pennsylvania has an interest in seeing that its licensed drivers are held to the standard of ordinary care in the operation of their motor vehicles. And second, the expectation of a Pennsylvania driver upon crossing the state border into Delaware is irrelevant in determining his liability for the commission of unintentional torts. *Griffith v. United Air Lines, Inc., supra.* As the Rhode Island Supreme Court has said:

> [M]otor vehicle accidents are not planned.... No driver alters his manner of driving when he crosses into a state which holds him to a lesser degree of care towards his passenger, because he would foresee his legal liabilities in accident cases in light of his own state's law.

*Labree v. Major, supra* at 671–672, 306 A.2d at 817.

Nor, in contrast to the majority's view, will "certainty, predictability and uniformity" be better served by applying Delaware law. To the contrary, the approach I have urged would better serve those interests than does that adopted by the majority and in *Neumeier v. Kuehner.*[5] For other jurisdictions would know that Pennsylvania has an interest in seeing to it that a Pennsylvania resident who injures a nonresident in an automobile accident is held to the same standard of care as he would be had he injured a Pennsylvania resident.

The order of the lower court should therefore be reversed.

---

**5.** In *Labree v. Major, supra,* the court said:
> We prefer a rule that looks to the residence of the parties rather than to the place of the accident in resolving conflicts problems arising out of automobile accidents. Thus, where a driver is from a state which allows a passenger to recover for ordinary negligence, the plaintiff should recover for ordinary negligence, the plaintiff should recover no matter what the law of his residence or the place of the accident .... We adopt this rule because the only state with an interest in protecting the driver and his insurer does not do so.
> *Id.* at 673, 306 A.2d at 817–18.