682 A.2d 363

Jennifer GOODMAN, A Minor by her Parent and Natural Guardian, Deanna GOODMAN, Appellant,

v.

Peter PIZZUTILLO, M.D., Harold Marks and the Alfred I. DuPont Institute and James Riviello, Appellees.

Jennifer GOODMAN, A Minor by her Parent and Natural Guardian, Deanna GOODMAN, Appellee,

v.

Peter PIZZUTILLO, M.D., Harold Marks and the Alfred I. DuPont Institute and James Riviello, Appellees,

Appeal of Harold MARKS, M.D., Appellant. (Two Cases.)

Jennifer GOODMAN, A Minor by her Parent and Natural Guardian, Deanna GOODMAN, Appellee,

v.

Peter PIZZUTILLO, M.D., James Riviello, Jr., M.D., Harold Marks, M.D., and the Alfred I. Dupont Institute.

Appeal of Peter PIZZUTILLO, M.D., James Riviello, M.D., Harold Marks, M.D., Appellants. (Two Cases.)

Jennifer GOODMAN, A Minor by her Parent and Natural Guardian, Deanna GOODMAN, Appellee,

v.

Peter PIZZUTILLO, M.D., James Riviello, Jr., M.D., Harold Marks, M.D., and the Alfred I. DuPont Institute, Appellees.

Appeal of Peter PIZZUTILLO, M.D., Appellant.

Jennifer GOODMAN, A Minor by her Parent and Natural Guardian, Deanna GOODMAN, Appellee,

v.

Peter PIZZUTILLO, M.D., James Riviello, Jr., M.D., Harold Marks, M.D., and the Alfred I. DuPont Institute, Appellees.

Appeal of James RIVIELLO, M.D., Appellant.

Superior Court of Pennsylvania.

Argued March 13, 1996.

Filed Aug. 27, 1996.

438

Michael J. D'Aniello, Norristown, *for* Jennifer Goodman.

Roseann L. Brenner, Philadelphia, *for* P. Pizzutillo, M.D., Alfred I. Dupont Institute & James Riviello.

Lawrence R. Berger, III, Philadelphia, *for* Harold Marks, M.D.

Before BECK, KELLY and OLSZEWSKI, JJ.

KELLY, Judge.

In this appeal, we are called upon to determine whether the trial court abused its discretion when it granted a motion to dismiss a complaint on the grounds of *forum non conveniens,* and whether the court erred when it denied: preliminary objections, which were based on lack of *in personam* jurisdiction; motions for reconsideration of the denial of the preliminary objections; and a motion for summary judgment. Under the facts of this case, we hold that the trial court did abuse its discretion when it dismissed the complaint on the grounds of *forum non conveniens.* We conclude that the appeals taken from the denial of preliminary objections based on lack of *in personam* jurisdiction, the denial of the motions for reconsideration, and the denial of the motion for summary judgment, are interlocutory. Accordingly, we reverse the trial court's order which dismissed the complaint on the ground of *forum*

*non conveniens,* quash the cross-appeals as interlocutory, and remand for further proceedings consistent with this opinion.

In these consolidated appeals, Jennifer Goodman, a minor, and Deanna Goodman, Jennifer's parent and natural guardian, appeal from the order dated March 13, 1995, and entered on the docket on March 22, 1995, in the Court of Common Pleas, Philadelphia County, which granted the motion to dismiss of Dr. Peter Pizzutillo, Dr. Harold Marks, Dr. James Riviello, Jr., and the Alfred I. DuPont Institute. Dr. Marks cross-appeals from the order dated August 24, 1989, which denied his preliminary objections based on lack of *in personam* jurisdiction and from the order dated May 26, 1994, which denied his motion for reconsideration, in the Court of Common Pleas, Philadelphia County. Dr. Pizzutillo cross-appeals from the order dated May 26, 1994, and revised on August 25, 1994, in the Court of Common Pleas, Philadelphia County, which denied his motion for reconsideration. Dr. Riviello cross-appeals from the order dated March 13, 1995, in the Court of Common Pleas, Philadelphia County, which granted defendants' petition to dismiss plaintiff's complaint for *forum non conveniens.* Drs. Pizzutillo, Riviello and Marks jointly cross-appeal from the order dated June 24, 1992, denying defendants' motion for summary judgment and from the order dated October 21, 1993, denying defendants' motion for reconsideration, in the Court of Common Pleas, Philadelphia County.

The relevant facts and procedural background of this appeal are as follows. On November 7, 1980, Jennifer Goodman, born November 2, 1971, was taken by her parents to consult Dr. Pizzutillo, a staff pediatric orthopedist at the DuPont Institute, to determine a method of treating her leg and orthopedic problems, including tibial torsion with which she had been afflicted for approximately five years. (Complaint at 3). In an effort to flatten out the overarch in Jennifer's left foot and place her heel in a neutral rotation, Dr. Pizzutillo began a program of casting Jennifer's left foot. (*Id.*). The casting continued through December of 1980. (*Id.* at 3–4). Because there was marked improvement of the cavis deformi-

ty of Jennifer's left foot, Dr. Pizzutillo recommended that Jennifer be fitted for an ankle-foot orthosis. (*Id.* at 4).

On February 17, 1981, Dr. Pizzutillo recommended that Deanna Goodman perform various stretching exercises on Jennifer's left foot and leg at least twice a day. (*Id.*). Jennifer's "leg problem remained relatively stable" until July 1, 1983, when she discovered that she was unable to bend her left foot upward. (*Id.*). On July 8, 1983, after a consultation with Dr. Marks, a neurologist, it was noted that Jennifer had developed a small osteochondroma of her left fibula and that she was suffering from weakness of and damage to her peroneal enervated muscles. (*Id.*).

As a result of these findings, Doctors Marks and Pizzutillo ordered an EMG study and a "rule-out diabetes" urinalysis. (*Id.*). Except for these studies, no further treatment was prescribed for Jennifer's neurologic or "drop-foot" disorder or the osteochondroma located at the proximal neck of her left fibula. (*Id.* at 4–5).

The condition of Jennifer's left extremity continued to deteriorate during the period from July 1983 through June 1984. (*Id.* at 5). On June 11, 1984, the deterioration in Jennifer's condition was noted by the doctors. (*Id.*). On October 8, 1984, Dr. Riviello, a staff pediatric neurologist at the DuPont Institute, saw Jennifer for a follow-up examination during which Deanna Goodman expressed her concern over her daughter's "drop-foot" condition and inability to operate the muscles that controlled the first toe on her left foot. (*Id.* at 5–6). Not until April 16, 1985 was Jennifer reevaluated and, on that date, Dr. Marks suggested an x-ray and CT scan of her left knee area, an orthopedic evaluation, and a possible surgical release of the peroneal nerve for Jennifer's left peroneal neuropathy, which Dr. Marks expressed might be secondary to nerve entrapment from the osteochondroma of the left tibia. (*Id.* at 6). However, it was not until June 11, 1985, when Jennifer was examined by Dr. Leslie N. Sutton at the Children's Hospital of Philadelphia, that the appellants were in-

formed that Jennifer had an osteochondroma on the fibular head of her left leg which was destroying her peroneal nerve.[1]

As a result of this information, on June 12, 1985, Jennifer underwent decompression of peroneal nerve and excision of osteophyte surgery, performed by Dr. Sutton. At the time of the surgery, Jennifer was thirteen and one-half years of age. On May 24, 1988, Deanna Goodman filed a complaint sounding in negligence and medical malpractice by and for her daughter, Jennifer, naming as defendants Doctors Pizzutillo, Marks, and Riviello and the Alfred I. DuPont Institute of the Nemours Foundation, and requesting that judgment be entered for the Goodmans, along with damages in excess of $20,000.00.

On June 23, 1988, the doctors and DuPont Institute filed preliminary objections to the Goodmans' complaint in the nature of a petition to transfer as well as raising the question of *in personam* jurisdiction. On September 26, 1988, the Honorable Samuel M. Lehrer ordered discovery on all disputed facts. Depositions of all the doctors and the administrator of the DuPont Institute were taken and filed of record by December 15, 1988. Judge Lehrer reviewed the doctors' and DuPont Institute's preliminary objections, together with all depositions, and rendered his decision to deny them on December 28, 1988. Dr. Marks and DuPont Institute moved for reconsideration of Judge Lehrer's ruling. On January 13, 1989, Judge Lehrer ordered his previous order vacated, pending reconsideration. Following oral argument on the issue of the court's *in personam* jurisdiction, Judge Lehrer reconsidered his decision of December 28, 1988, and entered an order on August 24, 1989, dismissing the DuPont Institute from this action based on the lack of *in personam* jurisdiction in Philadelphia. However, Judge Lehrer found that the court had *in personam* jurisdiction over Dr. Marks. On August 28, 1989, the remaining defendants filed a demand for jury trial.

On November 17, 1989, the doctors filed their answer to the Goodmans' complaint and new matter, averring that the complaint was barred by the applicable statute of limitations, that

1. This nerve enervates the muscles of the foot, ankle, and toes.

the Goodmans failed to state a claim upon which relief might be granted, that the Goodmans were barred from recovery under the doctrine of comparative negligence, that "other entities" caused in whole the Goodmans' injuries and losses, and that all of the Goodmans' claims were barred by the doctrine of laches. In conclusion, Doctors Pizzutillo, Riviello, and Marks demanded judgment in their favor, together with costs and attorneys' fees. The Goodmans filed a reply to the doctors' new matter eleven days later.

The doctors then filed a motion for summary judgment. On June 24, 1992, the Honorable Gene D. Cohen denied the motion. The doctors filed a petition for reconsideration of their motion for summary judgment. On October 21, 1993, Judge Cohen denied the doctors' petition for reconsideration. In a July 27, 1994 petition for clarification, the doctors requested that Judge Cohen delete a footnote from his May 26, 1994 order which related to the statute of limitations. On August 25, 1994, Judge Cohen denied this request.

Prior to trial, a settlement conference was ordered by the Honorable Sandra Mazer Moss. During this conference, Judge Mazer Moss considered the doctors' renewed petition to dismiss for *forum non conveniens*. As a result of the conference, on March 13, 1995, Judge Mazer Moss granted the doctors' petition and ordered that the matter be transferred to the State of Delaware. The Goodmans filed a timely notice of appeal on March 28, 1995. On April 10, 1995, the doctors filed a notice of cross-appeal from the part of Judge Mazer Moss' order which dismissed the doctors' petition for reconsideration of the order denying their motion for summary judgment.

On appeal, the Goodmans present the following questions for our review:

I. WHETHER THE CALENDAR JUDGE ERRED IN DISMISSING A COMPLAINT FOR *FORUM NON-CONVENIENS* AFTER RAISING THE ISSUE *SUA SPONTE?*

II. WHETHER THE COURT ERRED IN DISMISSING A COMPLAINT BASED UPON *FORUM NON-CON-*

*VENIENS* WHERE THERE WAS NO ALTERNATIVE FORUM AVAILABLE?

(The Goodmans' Brief at 5). The doctors raise the following questions:

I. WHETHER THE LOWER COURT ERRED IN DENYING DRS. PIZZUTILLO, MARKS AND RIVIELLO'S MOTION FOR SUMMARY JUDGMENT?

 A. WHETHER THE SUBSTANTIVE LAW OF DELAWARE RATHER THAN THE SUBSTANTIVE LAW OF PENNSYLVANIA SHOULD BE APPLIED TO THIS LAWSUIT?

 B. WHETHER MS. GOODMAN IS BARRED FROM BRINGING THIS LAWSUIT UNDER TITLE 18, DELAWARE CODE, SECTION 6856?

II. WHETHER THE LOWER COURT ERRED IN DENYING DR. MARKS' PRELIMINARY OBJECTIONS FOR LACK OF *IN PERSONAM* JURISDICTION?

 A. WHETHER THE PENNSYLVANIA COURTS LACK SPECIFIC JURISDICTION OVER DR. MARKS PURSUANT TO 42 PA.C.S.A. § 5322?

 B. WHETHER THE PENNSYLVANIA COURTS LACK GENERAL JURISDICTION OVER DR. MARKS PURSUANT TO 42 PA.C.S.A. § 5301.

(The Doctors' Brief at 11).

We note that although the Goodmans have enumerated two issues on appeal, essentially, they claim that the trial court abused its discretion in dismissing their action pursuant to the doctrine of *forum non conveniens*. We therefore address these issues as a single claim.

The Pennsylvania Rules of Civil Procedure pertinently provide as follows:

> For the convenience of parties and witnesses the court upon petition of any party may transfer an action to the appropriate court of any other county where the action could originally have been brought.

Pa.R.Civ. P. 1006(d)(1). When a trial court orders the change of venue in a civil action, an interlocutory appeal as of right exists. Pa.R.App.P. 311(c); *Vogel v. National Railroad Passenger Corporation,* 370 Pa.Super. 315, 318 n. 3, 536 A.2d 422, 424 n. 3 (1988). A trial court's decision to change venue will not be reversed by an appellate court absent an abuse of discretion. *Scribner v. Mack Trucks,* 427 Pa.Super. 71, 77, 628 A.2d 435, 438 (1993), *allocatur denied,* 537 Pa. 623, 641 A.2d 588 (1994) (citations omitted); *Shears v. Rigley,* 424 Pa.Super. 559, 564, 623 A.2d 821, 824 (1993) (citations omitted). Hence, a change of venue must stand on appeal if any basis for it exists. *Scribner v. Mack Trucks, supra* at 77, 628 A.2d at 438 (citing *Shears v. Rigley, supra* at 564, 623 A.2d at 824).

 Our Supreme Court has recently reiterated in *Scola v. A.C. & S., Inc.,* 540 Pa. 353, 367, 657 A.2d 1234, 1241 (1995) the relevant factors for transferring a case based on *forum non conveniens* as set forth in *Okkerse v. Howe,* 521 Pa. 509, 556 A.2d 827 (1989). In both these cases, the Supreme Court has stated that,

[o]ur Rules of Civil Procedure provide a plaintiff with options as to where to bring suit, and this Court has emphatically stated that the choice of forum by a plaintiff is entitled to weighty consideration..... [A plaintiff] should not be deprived of the advantages presumed to come from [his or her original] choice

"unless the defendant *clearly adduces* facts that 'either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience ... or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own private and public interest factors' [*but* ] *unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.*"

Thus, the party seeking a change of venue bears a heavy burden of justifying the request, and it has been consistently held that this burden includes the demonstration *on the record* of the claimed hardships.

*Scola v. A.C. & S., Inc., supra* at 367, 657 A.2d at 1241 (quoting *Okkerse v. Howe, supra* at 517–18, 556 A.2d at 831–32) (emphasis in original). Furthermore, this Court recognizes that

one of the most important factors in determining whether a dismissal on ground of *forum non conveniens* is appropriate is whether an alternative forum is available to the plaintiff. *Plum v. Tampax, Inc.,* [399 Pa. 553, 160 A.2d 549 (1960) ]. *See also Shears v. Rigley,* [424 Pa.Super. 559, 623 A.2d 821 (1993) ]. *Cinousis v. Hechinger Dep't Store,* [406 Pa.Super. 500, 594 A.2d 731 (1991) ]; *Miller v. Gay,* 323 Pa.Super. 466, 470 A.2d 1353 (1983). The Pennsylvania Supreme Court in *Plum v. Tampax, Inc., supra,* stated:

[an] action will not be dismissed in any event unless an alternative forum is available to the plaintiff. Because of the second factor, the suit will be entertained, no matter how appropriate the forum may be, if defendant cannot be subjected to jurisdiction in other states. The same will be true if plaintiff's cause of action would elsewhere be barred by the statute of limitations, unless the court is willing to accept defendant's stipulation that he will not raise this defense in the second state.

*Id.* at 561, 160 A.2d at 553 (quoting Restatement (Second) Conflicts of Laws § 117(c) (tentative draft 1957)). *See also Shears v. Rigley, supra; Cinousis v. Hechinger Dep't Store, supra.* Proper application of the doctrine of *forum non conveniens* requires the trial court to make a finding, on the record, as to the availability of other forums and then exercise its discretion after considering all other factors. *Plum v. Tampax, Inc., supra.* Dismissal of a complaint on the grounds of *forum non conveniens* should not be granted when such a decision results in the plaintiff being unable to institute an action elsewhere. *Miller v. Gay,* 323 Pa.Super. 466, 470 A.2d 1353 (1983). *Cf. Norman v. Norfolk & Western Railway, Co.,* 228 Pa.Super. 319, 323 A.2d 850 (1974) (no abuse of discretion to dismiss a complaint conditionally requiring the defendant to stipulate that he will accept service and will not plead the statute of limitations in

the more convenient forum); *White v. Norfolk and Western Railway Co.*, 229 Pa.Super. 331, 323 A.2d 68 (1974) (same). *Farley v. McDonnell Douglas Truck Services, Inc.*, 432 Pa.Super. 456, 462–63, 638 A.2d 1027, 1030 (1994).

Instantly, the trial court granted the doctors' motion and dismissed the Goodmans' complaint on the grounds of *forum non conveniens.* In its opinion, the trial court discussed the private and public interest factors that it considered and made a finding that an alternative forum was available. The trial court recognized that this action could not be transferred to Delaware, where it would be barred by the statute of limitations. For this reason, the trial court approved a stipulation which reserved all defenses regarding the statute of limitations available in Pennsylvania in May 1988.[2] Unfortunately, the trial court failed to understand that the Delaware statute of limitations was an available defense to the doctors in May 1988.[3] Thus, this stipulation places the Goodmans out of court in Delaware without an alternative forum in which to bring this action. Therefore, we conclude that the trial court erred when it dismissed the Goodmans' complaint

**2.** The Goodmans refused to sign the stipulation. We note that only the doctors are required to sign said stipulation because it restricts only their rights.

**3.** The Goodmans' case is not time barred by the Pennsylvania statute of limitations. Ms. Goodman, while still an unemancipated minor, discovered the alleged negligence in June, 1985, and commenced this action in May, 1988, within the time period allowed under the Pennsylvania Statute of Limitations. *See* 42 Pa.C.S.A. § 5533(b). Section 5533(b), specifically provides that if an individual entitled to bring a civil action is an unemancipated minor at the time the cause of action accrues, the statute of limitations is tolled during the period of minority and permits the individual to commence the action within two (2) years after attaining the age of eighteen. 42 Pa.C.S.A. § 5533(b). In contrast, the Delaware Statute of Limitations states that a claim for personal injury arising out of medical malpractice shall be brought within two (2) years from the date upon which the injury occurred, unless the event of the personal injury could not be discovered within two (2) years, then the individual may bring the action prior to the expiration of three (3) years from the date upon which the injury occurred. 18 Del. C. § 6856(1). Further, the Delaware Statute of Limitations provides that a minor under the age of six shall commence the action within three (3) years from the date upon which the injury occurred or has until the minor's sixth birthday in which to bring the action. 18 Del. C. § 6856(2).

where, as here, no alternative forum was available to them. *See id.* (citing *Plum v. Tampax, Inc., supra* ).

Further, we conclude that the trial court erred when it found, reasoning that there were insufficient contacts with Philadelphia County to maintain this action in that forum (Trial Court Opinion at 12), that the private and public interest factors and hardship considerations strongly favored transfer to the State of Delaware. In the instant case, the doctors failed to adduce facts on the record that either showed that trying the case in Philadelphia County was so oppressive and vexatious to them as to be out of proportion to the Goodmans' convenience; nor has the evidence presented made a trial in Philadelphia County inappropriate. The trial court considered the following private interest factors to be in favor of transferring the action to Delaware: (1) during the relevant period of time, the doctors treated Ms. Goodman solely at the Alfred I. DuPont Institute in Delaware, where the doctors maintained their medical practices; (2) the medical records of that treatment are located in Delaware; and (3) at that time, Drs. Pizzutillo and Marks were residents of the State of Delaware. The trial court, however, did not fully consider the following facts: (1) the Goodmans and Dr. Pizzutillo currently reside in the Commonwealth of Pennsylvania and Drs. Pizzutillo and Riviello presently practice medicine in Philadelphia County; (2) during the relevant period, all three doctors were licensed to practice medicine in Pennsylvania; (3) Dr. Marks has been a clinical assistant professor of pediatrics and neurology at Temple University Medical Center and St. Christopher's Hospital in Philadelphia; and (4) Dr. Marks continues to have staff privileges at both Philadelphia institutions.

In its opinion, the trial court implied that the Goodmans had an improper motive for filing in Philadelphia County and stated, "It would constitute a hardship for Defendants to expend vast sums to litigate in the Philadelphia court system which continues to be severely congested." (Trial Court Opinion at 14–15). However, the trial court failed to consider the six years of discovery and pre-trial preparation which has taken place in Philadelphia County. The three doctors

have participated in trial videotape depositions and settlement conferences in Pennsylvania. Ms. Goodman's subsequent diagnosis and treatments were rendered in Pennsylvania. In addition, the Goodmans' expert witnesses are located in Pennsylvania. Hence, we conclude that dismissing the case in Pennsylvania does not best effectuate the interests of the parties considering the substantial cost to relitigate the action in Delaware. Moreover, the record does not demonstrate how a trial in Philadelphia, the county where six years of preparation for trial has occurred and Drs. Pizzutillo and Riviello currently practice, would create great hardship for the doctors. The private factors simply do not supply sufficiently weighty reasons for depriving the Goodmans of their choice of forum. *See Scola v. A.C. & S., Inc., supra.*

The trial court also discussed the public factors which it considered in determining whether to dismiss the case on the grounds of *forum non conveniens.* The trial court stated: "It would be unfair, unreasonable, and against public policy to misuse our overburdened court system to impose jury duty on Philadelphia citizens who have no connection to treatment rendered in Delaware at a Delaware institution solely to provide a Montgomery County resident with better verdict potential." (Trial Court Opinion at 14–15).

This Court is aware of the increased congestion in the Philadelphia courts, however,

> this factor alone should not be viewed as giving trial courts *carte blanche* authority to transfer any case which may be as conveniently litigated elsewhere. *See Rini v. New York Central Railroad Co.,* 429 Pa. 235, 240 A.2d 372 (1968) (Musmanno, J., dissenting) ("if case load is to determine availability of the courts to injured persons, then justice has become a commodity dependent on the size of the courthouse and the number of personnel therein rather than on the intrinsic merit of claims filed by litigants"); *Greenfeig v. Seven Springs Farm, Inc.,* 416 Pa.Super. 580, 611 A.2d 767 (1992) ("Although we certainly recognize the tremendous burdens placed upon our courts by inadequate and unreasonable funding limitations, such circumstances do not pro-

vide the basis for a *forum non conveniens* transfer of a case."). *See also Wills v. Kaschak*, 420 Pa.Super. 540, 617 A.2d 37 (1992) (Kelly, J. dissent); *Turner v. Kohl*, 420 Pa.Super. 507, 617 A.2d 20 (1992) (Concurring Statement by Kelly, J.).

*Farley v. McDonnell Douglas Truck Service, Inc., supra* at 466, 638 A.2d at 1032. Here, all three doctors are licensed in Pennsylvania and Drs. Pizzutillo and Riviello practice in Philadelphia County. Further, Dr. Marks has an affiliation with two Philadelphia institutions. Thus, the citizens of Philadelphia have an interest in this litigation and the quality of treatment which these doctors provide to their community. For these reasons, we conclude that the public factors do not weigh strongly in favor of the motion to dismiss on the basis of *forum non conveniens*. *See Scola v. A.C. & S., Inc., supra.*

Next, we must determine whether the issues raised by the doctors on cross-appeal are properly before this Court. The cross-appeal taken from the August 24, 1989 order, which denied Dr. Marks' preliminary objections based on lack of *in personam* jurisdiction is interlocutory and therefore not appealable.[4] Pa.R.App.P. 311(b). The orders of October 21, 1993, May 26, 1994, and August 25, 1994, which denied the doctors' motions for reconsideration, are not appealable in that an order denying reconsideration is not subject to review on appeal. *See Valentine v. Wroten*, 397 Pa.Super. 526, 580 A.2d 757 (1990). Furthermore, the cross-appeal taken from the order dated June 24, 1992, which denied the doctors' motion for summary judgment, is interlocutory and therefore not properly on appeal before this Court. *See Daywalt v. Montgomery Hospital*, 393 Pa.Super. 118, 573 A.2d 1116 (1990). Thus, the issues raised by the doctors on cross-appeal are quashed because they are improper appeals from interlocutory orders.

Accordingly, we conclude that the private and public factors do not weigh strongly in favor of the motion to dismiss on the

4. We note that Pa.R.App.P. 311(b)(2) is not applicable because the trial court's order dismissing the Goodmans' complaint for *forum non conveniens* was not a determination on the merits.

basis of *forum non conveniens* and that the trial court did not fully consider all the facts on the record, specifically whether an alternative forum existed, before dismissing the Goodmans' complaint. Therefore, we hold that the trial court abused its discretion when it granted the motion to dismiss. As to the issues raised on cross-appeal, we conclude that they are not appealable. For the foregoing reasons, we quash the doctors' cross-appeals, reverse the trial court's March 13, 1995 order and remand for further proceedings consistent with this opinion.

Order reversed; cross-appeals quashed; case remanded for trial. Jurisdiction relinquished.

BECK, J., concurs in the result.