# Dearlove v. Genzyme Transgenics Corporation

518

C.P. of Philadelphia County, November Term 2001, no. 1031.

*Cletus P. Lyman,* for plaintiffs.
*Judith E. Harris* and *William J. Delaney,* for defendant.

SHEPPARD JR., *J.,* July 19, 2002—Defendant, Genzyme Transgenics Corporation, has filed a petition to dismiss plaintiffs' class action complaint pursuant to 42 Pa.C.S. §5322(e). For the reasons set forth, the court is issuing a contemporaneous order denying the petition.

## FACTUAL ALLEGATIONS

Plaintiffs, George Dearlove and Annaregina Roberts, filed this class action alleging that GTC canceled the putative plaintiffs' stock options, originally granted to them pursuant to GTC's 1993 equity incentive plan, in violation of the plan. Compl., ¶¶29-31.

GTC is a biopharmaceuticals company with its headquarters and principal place of business at 175 Crossing Boulevard, Framingham, Massachusetts. Petition, ¶¶1-2. Framingham, Massachusetts is located approximately 290 miles from Philadelphia, Pennsylvania. Petition, ¶4; answer,[1] ¶4.

Previously, GTC owned a subsidiary called Primedica Corporation, also a biotechnology company with its headquarters and principal place of business in Worcester, Massachusetts. Petition, ¶28; answer, ¶28. GTC also previously owned Primedica's five subsidiaries: Primedica Worcester Inc. (principal place of business in Worcester, Massachusetts), Primedica Cambridge Inc. (principal place of business in Cambridge, Massachusetts), Primedica Argus Research Laboratories Inc. (principal place of business in Pennsylvania[2]), Primedica Redfield Inc. (principal place of business in Redfield, Arkansas),

---

1. References to "answer" in this opinion refer to plaintiffs' answer to the petition to dismiss.

2. Plaintiffs allege that Primedica Argus Research Laboratories Inc.'s principal place of business is in Horsham, Pennsylvania, whereas defendant alleges that it is in Argus, Pennsylvania. Petition, ¶32; answer, ¶32. For present purposes this is not a disputed *material* fact. The parties agree that Primedica Argus Research Laboratories Inc.'s principal place of business is in Pennsylvania, although not in Philadelphia County.

and Primedica Rockville Inc. (principal place of business in Rockville, Maryland). Petition, ¶¶29-34; answer, ¶¶29-34. (Primedica Corporation and its five subsidiaries will be referred to in this opinion, collectively, as "Primedica.")

The plaintiffs are employees of Primedica Argus Research Laboratories. Compl., ¶4. Plaintiff, George Dearlove, resides in Landenberg, Pennsylvania, and plaintiff, Annaregina Roberts, resides in Philadelphia, Pennsylvania. Compl., ¶¶1-2; answer, ¶51.

In 1993, GTC instituted a stock option plan entitled the 1993 equity incentive plan to award GTC stock options to the employees of GTC and Primedica. Petition, ¶¶5-6. Beginning in 1993, GTC awarded stock options pursuant to the plan to Primedica employees, including the plaintiffs. Petition, ¶¶42-43; answer, ¶¶42-43; Compl., ¶¶6, 9. The plan states that its provisions "shall be governed by and interpreted in accordance with the laws of the Commonwealth of Massachusetts." Petition, ¶9.

On February 26, 2001, GTC sold Primedica to Charles River Laboratories International Inc., a biotechnology company with its headquarters and principal place of business in Wilmington, Massachusetts. Petition, ¶¶35-36. Defendant contends that upon the sale of Primedica, "the plan required the exercise or cancellation of the vested shares held by those employees within 90 days of the closing of the sale." Petition, ¶45. According to GTC, on March 9, 2001, it notified Primedica employees who held stock options that they had until May 26, 2001 to exercise their vested options. Petition,

¶46; answer, ¶¶46, 51. Plaintiffs dispute this, contending that no Pennsylvania employee was given notice. Those stock options held by Primedica employees which were not exercised by May 26, 2001, were canceled. Compl., ¶31.

Dearlove and Roberts bring the complaint on behalf of a putative class which includes "all employees of Primedica Corporation and it[s] subsidiaries who, as of February 7, 2001, had been awarded stock options and who had not yet exercised their options." Compl., ¶13. Plaintiffs allege that the putative class is composed of 641 former employees of Primedica. Answer, ¶¶42-43. Plaintiffs base this allegation on a document produced by defendant containing the last known addresses of all employees of Primedica who, as of February 7, 2001, had been awarded stock options and who had not yet exercised their options. Answer, exhibit 5, defendant's response to plaintiffs' request for interrogatories no. 1.

Plaintiffs allege that of these 641 former Primedica employees, 299 (or 46.6 percent) have addresses in Massachusetts, 145 (or 22.6 percent) have addresses in Pennsylvania (17 of whom are in Philadelphia), 70 (or 10.9 percent) have addresses in Maryland, 68 (or 10.6 percent) have addresses in Arkansas, and 59 (or 9 percent) have addresses in 11 other states (including 19 in Connecticut, eight in Rhode Island and six in New Hampshire). Answer, ¶42.

Defendant alleges that "[a]s of February 26, 2001, stock options issued pursuant to the plan were held by 38 current and former employees of Primedica Corporation, 301 current and former employees of Primedica

Worcester [Inc.] and Primedica Cambridge [Inc.], 78 current and former employees of Primedica Rockville [Inc.], 153 current and former employees of Primedica Argus [Research Laboratories Inc.], and 66 current and former employees of Primedica Redfield [Inc.]." Petition, ¶42.

In their complaint, plaintiffs have alleged three counts against defendant GTC: breach of contract, breach of covenant of good faith and fair dealing, and unjust enrichment. Compl., ¶¶28-36; 37-42; 43-47.

The instant petition seeks to dismiss based on forum non conveniens. Defendant contends that this case should be dismissed and brought by plaintiffs in Worcester County, Massachusetts.

## DISCUSSION

### I. *Standard of Proof To Dismiss Based on Forum Non Conveniens*

Defendant relies on 42 Pa.C.S. §5322(e), which permits a Pennsylvania court to dismiss a matter in whole or in part when the court finds that in the "interest of substantial justice" the matter should be heard in a forum outside Pennsylvania. To analyze defendant's petition, this court also looks to Pa.R.C.P. 1006 which governs changes of venue within Pennsylvania. Both section 5322(e) and Rule 1006 are applied in the same way in cases involving a petition to transfer venue based on the common-law doctrine of forum non conveniens. *Jones v. Borden Inc.,* 455 Pa. Super. 110, 114, 687 A.2d 392,

394 (1996), citing *Shears v. Rigley,* 424 Pa. Super. 559, 564, 623 A.2d 821, 824 (1993).[3]

To dismiss pursuant to section 5322(e), a court must first find that the case could be brought in an alternative forum. *Farley v. McDonnell Douglas Truck Services Inc.,* 432 Pa. Super. 456, 462, 638 A.2d 1027, 1030 (1994). Once the viability of an alternative forum has been determined, the defendant has the burden of showing that the plaintiff's choice of forum is vexatious or oppressive. The Pennsylvania Supreme Court has expounded on this "vexatious or oppressive" standard, stating:

"[T]he defendant may meet its burden of showing that the plaintiff's choice of forum is vexatious to him by establishing with facts on the record that the plaintiff's choice of forum was designed to harass the defendant, even at some inconvenience to the plaintiff himself. . . . Alternatively, the defendant may meet his burden by establishing on the record that trial in the chosen forum is oppressive to him; for instance, that trial in another county would provide easier access to witnesses or other sources

3. GTC argues that although the Pennsylvania Supreme Court modified the transfer of venue standard under Rule 1006(d)(1) in *Cheeseman,* that case "suggests" that the standard would not be modified for section 5322 petitions and that the court "would continue to apply the private and public interests test to petitions under section 5322(e)." Def's memorandum of law, p. 10. The Pennsylvania Supreme Court has *not* given this instruction, and absent any case law supporting GTC's position, this court will follow the *Cheeseman* standard to analyze defendant's section 5322(e) petition. *Jones,* 455 Pa. Super. at 114, 687 A.2d at 394. Consequently, this court will not consider pre-*Cheeseman* concerns, such as whether denying the petition will cause congestion of this court's docket, or what law will ultimately govern the merits of plaintiffs' claims.

of proof, or to the ability to conduct a view of premises involved in the dispute. But, we stress that the defendant must show more than that the chosen forum is merely inconvenient to him." *Cheeseman v. Lethal Exterminator Inc.*, 549 Pa. 200, 213, 701 A.2d 156, 162 (1997). (footnote omitted)

The burden on the defendant to satisfy this standard is a heavy one. *Goodman by Goodman v. Pizzutillo,* 452 Pa. Super. 436, 445, 682 A.2d 363, 367 (1996). The defendant's burden to justify a change in venue is increased when a plaintiff has chosen his home forum. *Page v. Ekbladh,* 404 Pa. Super. 368, 372-73, 590 A.2d 1278, 1280 (1991).

In essence, a defendant must establish facts on the record showing in what ways the plaintiff's chosen forum is vexatious or oppressive. *Hoose v. Jefferson Home Health Care Inc.,* 754 A.2d 1, 3 (Pa. Super. 2000), citing *Cheeseman,* 549 Pa. at 213, 701 A.2d at 162. Although no evidentiary hearing is necessary, the defendant must provide the names of the witnesses who will be called to testify, a general statement of what their testimony will cover, and an explanation of the hardships the witnesses would suffer if the matter remained in the plaintiff's chosen forum. *Johnson v. Henkels & McCoy Inc.,* 707 A.2d 237, 240 (Pa. Super. 1997); see also, *Petty v. Suburban General Hospital,* 363 Pa. Super. 277, 285, 525 A.2d 1230, 1234 (1987). If the defendant fails to establish these facts, a court must deny the forum non conveniens petition.

For purposes of this petition and pursuant to Pa.R.C.P. 206.7(c), the record consists of plaintiffs' verified com-

plaint, defendant's verified petition to dismiss, plaintiffs' verified answer to the petition, as well as the affidavits and verified discovery responses attached to, and offered in support of these filings.[4] Rule 206.7(c) states:

"If an answer is filed raising disputed issues of material fact, the petitioner may take depositions on those issues, or such other discovery as the court allows, within the time set forth in the order of the court. If the petitioner does not do so, the petition shall be decided on petition and answer and all averments of fact responsive to the petition and properly pleaded in the answer shall be deemed admitted for the purpose of this subdivision." Pa.R.C.P. 206.7(c). Accordingly, all of plaintiffs' averments of fact responsive to the defendant's petition and properly pleaded shall be deemed admitted.

## II. *Availability of an Alternative Forum*

The initial consideration is whether this case could be brought in an alternative forum because "[d]ismissal of a complaint on the grounds of forum non conveniens should not be granted when such a decision results in the plaintiff being unable to institute an action elsewhere." *Farley,* 432 Pa. Super. at 463, 638 A.2d at 1030.

Plaintiffs argue that this action could not be maintained as a nationwide class action in Massachusetts because that Commonwealth's class action rule, specifically Mass.R.C.P. 23(b), does not permit a putative class mem-

---

4. Plaintiffs argue that for purposes of evaluating the petition to dismiss, the record consists only of plaintiffs' answer to the petition and the defendant's answers to plaintiffs' interrogatories. Pltfs' memorandum of law, p. 2. This court disagrees based on the language of Rule 206.7(c).

ber to opt out of a class action. Without an opt-out provision, plaintiffs argue that Massachusetts would not be able to comply with the United States Supreme Court's mandate of *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811 (1985), that a state must permit a potential plaintiff the opportunity to opt out of a class action. Pltfs' memorandum of law, p. 11. Plaintiffs further argue that notwithstanding the absence of an alternative forum for what they hope will be a nationwide class action, it would be inappropriate to find that the putative class members could bring individual actions in alternative fora because Pennsylvania favors class actions in circumstances where claims of many individuals can be resolved together. *Id.* at 13.

In response, GTC contends that, despite the absence of an opt-out provision, this potential nationwide class action could be maintained in Massachusetts in accordance with the United States Supreme Court's mandate because a Massachusetts court may assert personal jurisdiction over a non-Massachusetts resident where there exists "some minimum contact with the Commonwealth which resulted from an affirmative, intentional act of the [party]." Def's memorandum of law, p. 3, quoting *Nile v. Nile,* 432 Mass. 390, 734 N.E.2d 1153, 1158 (2000); see *Eldridge v. Provident Companies Inc.,* no. 97-1099, 2000 WL 289640, *2-3 (Mass. Super. 2000). (In consideration of a motion for nationwide class certification, the court held that "the opportunity to opt out [of the class] may not be required in those instances where a state can establish personal jurisdiction over all plaintiffs or where the quest for equitable relief predominates over the pursuit of money damages.") GTC contends that a Massa-

chusetts court could assert personal jurisdiction over Dearlove and Roberts, as well as each of the members of the putative class, because all of them have worked to generate profits for GTC, a Massachusetts company, and participated in GTC's stock option plan which was administered in Massachusetts. Def's memorandum of law, pp. 3-4. Thus, GTC argues that a Massachusetts court could serve as an alternative forum for this action because it could satisfy due process concerns simply by providing notice and an opportunity for the putative class members to object. Furthermore, GTC urges that a finding that plaintiffs could bring individual actions in Massachusetts satisfies the requirement that an alternative forum be available for the plaintiffs to litigate their claims. *Id.*

This court is persuaded that a Massachusetts court could serve as an alternative forum for this action based on assertion of personal jurisdiction over the putative class members. However, the existence of the alternative forum is not dispositive. The court must now determine whether this forum is oppressive or vexatious, so as to warrant dismissal.

### III. *Whether Plaintiffs' Chosen Venue Is Vexatious or Oppressive*

The standard mandates that defendant demonstrate on the record that the forum is indeed oppressive, not whether there is a lack of a factual connection to the chosen forum, or whether another forum would be more convenient. *Cheeseman,* 549 Pa. at 214, 701 A.2d at 162. Our Supreme Court has held, "[c]laims by the defendant

in its petition that no significant aspect of the case involves the chosen forum, and that litigating in another forum would be more convenient . . . do not amount to a showing that the chosen forum is oppressive or vexatious." *Cheeseman,* 549 Pa. at 214, 701 A.2d at 162.

GTC cites several reasons, supported by verified affidavits,[5] why litigating this case in Philadelphia County is oppressive and vexatious. First, GTC argues that "[a]ll of the individuals that GTC anticipates calling as witnesses at trial currently work and reside in Massachusetts" and "[a]ll of the witnesses at trial will experience substantial hardship if they are required to travel to Philadelphia to testify." Petition, ¶¶51-52; affidavits of Henry Blair ¶7; Francis Bullock ¶¶9-10, John Green ¶¶7-9, Patricia Nagle ¶9, Alan Tuck ¶8. But, the fact that five affiants who may be called as trial witnesses reside in Massachusetts is not persuasive, in and of itself, because all five need not attend for the entire trial, but only for the time that they testify. In addition, Philadelphia is easily accessible from the areas of Massachusetts where the five affiants reside and work. Pltfs' memorandum of law, pp. 18-19. It is true that today's heightened security measures can result in increased travel time, but with counsel's organization and cooperation, these affiants will not have to travel "back and forth" to Philadelphia for trial. The

---

5. GTC has supplied affidavits by Henry Blair (member of the board of GTC and voting member of its compensation committee), Francis J. Bullock (member of the board of GTC and voting member of its compensation committee), John B. Green (vice president and chief financial officer of GTC), Patricia Nagle (stock plan/401(k) administrator for GTC), and Alan Tuck (member of the board of GTC and voting member of its compensation committee).

affidavits supplied by GTC reveal that the affiants may be inconvenienced, but do not show facts sufficient to overcome the consideration given to plaintiffs' chosen forum.

GTC also urges that "[t]he business of each of the companies that employs the individuals that GTC anticipates calling as witnesses at trial will be seriously interrupted if those individuals are required to travel to Philadelphia to testify." Petition, ¶54; affidavits of Henry Blair ¶8; Francis Bullock ¶10, John Green ¶¶7, 9, Patricia Nagle ¶10, Alan Tuck ¶9. This court is not persuaded that the burden of testifying at trial will unduly oppress or vex these folks in that GTC has produced a travel log showing that these five affiants take frequent trips outside of Massachusetts for business and personal reasons. Answer, exhibit 4, defendant's response to plaintiffs' request for production of documents, addenda 1-5. If these five executives can conduct and manage their work while away on business and personal trips to locations such as Hawaii, Bermuda, Europe, Florida, Alabama and Colorado, this court believes that they can do the same while in Philadelphia for what this court will insist be as efficient a trial as possible.[6]

GTC also argues that litigating this case in Philadelphia is oppressive and vexatious because the relevant documents are located in Massachusetts, including "[s]preadsheets that track the disposition of options issued to Primedica employees under the plan between

---

6. To decrease any inconvenience, this court will require counsel to accommodate the business schedules of GTC's trial witnesses as much as possible.

1993 and 2001, copies of correspondence from GTC to the Primedica employees who were awarded options during that period, the 1993 equity incentive plan, the plan prospectuses, . . . copies of award certificates issued under the plan" and "minutes of the meetings of the [compensation] committee throughout the period 1993 to the present." Petition, ¶¶48-49. The location of these documents does not present an insurmountable impediment, however, because plaintiffs' counsel has offered to review the documents where they are located and arrange for copying and shipping. Answer, ¶48. Requiring GTC to copy and mail certain select documents crucial to the issues in this case would not qualify as being sufficiently oppressive to warrant dismissal. In addition, GTC's argument that plaintiffs have not asserted that any relevant documents or sources of proof are located in Pennsylvania (reply, pp. 10-13) is not controlling because it is the burden of the party moving for dismissal or transfer based on forum non conveniens to show the oppressive or vexatious nature of the chosen forum. It is not the burden of the non-moving party to show otherwise. *Goodman,* 452 Pa. Super. at 445, 682 A.2d at 367.

Furthermore, GTC's argument that this court should not defer to the chosen forum because the putative class members reside in other states, such as Arkansas, Maryland and Massachusetts, is not determinative whether the forum is oppressive or vexatious to the defendant. Def's memorandum of law, p. 15. Similarly, GTC's argument that the chosen forum does not have a sufficient nexus to the stock option plan administered in Massachusetts is not compelling. Def's memorandum of law, pp. 22-23. These arguments sidestep the relevant test whether the

forum is oppressive and vexatious to the defendant. They focus instead on extraneous issues such as whether there is a lack of a factual connection to the chosen forum, whether another forum would be more convenient, and how significant the role of each of the plaintiffs will be. *Cheeseman,* 549 Pa. at 214, 701 A.2d at 162.

GTC's reliance on *International Mill Services Inc. v. Allegheny Ludlum Corporation,* no. 0106-1559, 2002 WL 748896 (Pa. C.P. April 11, 2002) is unpersuasive. In that case, this court transferred venue to Washington County, Pennsylvania where the defendant's witnesses would have had to travel over 300 miles to testify at trial, and all of the witnesses, including plaintiff's witnesses, resided outside of Philadelphia, mostly in western Pennsylvania and Ohio. This case is distinguishable. Plaintiff, Annaregina Roberts, resides in Philadelphia County, and 16 putative class members reside in Philadelphia. Pennsylvania case law dictates that the plaintiff's choice of forum should be given weighty consideration, especially when a plaintiff has chosen his home forum. *Page,* 404 Pa. Super. at 373, 590 A.2d at 1280. Moreover, the facts in the instant case do not reveal that plaintiffs have brought this action in Philadelphia at an inconvenience to themselves in order to harass GTC. In addition, in *International Mill,* the defendant requested a transfer of venue within Pennsylvania, whereas in the instant case, GTC requests dismissal of this action altogether.[7] This factor, along with the other considerations, results in the

---

7. Transfer of venue to Worcester County, Massachusetts is not an option because this court lacks the authority to transfer matters to other states' courts. *Farley,* 432 Pa. Super. at 467 n.2, 638 A.2d 1032 n.2.

conclusion that the record in the instant case is distinguishable from *International Mill.*[8]

In summary, *Cheeseman, supra,* controls and the considerations advanced by GTC are insufficient to meet that decision's burden.

## CONCLUSION

For the reasons discussed, defendant's petition to dismiss pursuant to 42 Pa.C.S. §5322(e) is denied. The court will enter a contemporaneous order consistent with this opinion.

## ORDER

And now, July 19, 2002, upon consideration of defendant, Genzyme Transgenics Corporation's petition to dismiss pursuant to 42 Pa.C.S. §5322(e), the plaintiffs' response in opposition, the respective memoranda, all matters of record, and in accord with the contemporaneous opinion filed of record, it is hereby ordered that the petition is denied.

---

8. Similarly, GTC's reliance on *Grace Community Inc. v. KPMG Peat Marwick LLP,* no. 0102-0478, 2002 WL 746379 (Pa. C.P. April 8, 2002) is misplaced. In that case, this court transferred venue from Philadelphia County to Lebanon County, Pennsylvania. Unlike this case, the record in *Grace Community* revealed that the plaintiffs themselves were located in Lebanon County, and 22 defendant employees who worked in defendant's Harrisburg office resided in or in close proximity to Lebanon County, most of whom would be called at trial to testify.